**COPY**  UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

IHX (UK) LTD.,                                  :

                                                :

                Petitioner,      :       Docket No.

                                                :       **NOTICE OF REMOVAL**
   -against-

                                                :

STATE BANK OF INDIA, BANK OF INDIA,             :
BNP PARIBAS, and ICICI BANK,

                                                :

                Respondents.    :

------------------------------------------------------------x

TO THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK:

       Respondent, State Bank of India ("SBI"), is a "foreign state," as that term is defined by

the Foreign Sovereign Immunity Act (the "FSIA").  SBI is therefore immune from suit in the

courts of the United States.  Notwithstanding the foregoing, and without waiving SBI's

sovereign immunity, SBI respectfully notifies this Court that, in accordance with 28 U.S.C.

Section 1441(d), it has removed this action from the Supreme Court for the State of New York,

New York County, to this Court.  As grounds for removal, SBI respectfully states:

<u>**FACTUAL BACKGROUND**</u>

    1.     On November 3, 2008, Petitioner IHX (UK) Ltd. ("IHX") filed a complaint in the

United States District Court for the Southern District of New York naming Ashapura Minechem,

Ltd. ("Ashapura") as a defendant (*IHX (UK) Ltd. v. Ashapura Minechem Limited*, Docket No.

08-CV-9436 (SAS)), asserting breach of contract claims arising out of a maritime contract

between the parties (the "Original Action").

2.     In the Original Action, IHX obtained an Ex Parte Order for Process of Maritime Attachment and Garnishment (the "PMAG"), and attached electronic funds transfers ("EFT's") totaling $95,489.04.  IHX also commenced an arbitration proceeding in London.  Ashapura neither appeared nor defended the arbitration, and an arbitration award was entered in IHX's favor.

3.     The court, by orders dated October 1, 2009, confirmed the arbitration award, and entered judgment against Ashapura for $24,157,442.00 plus interest and costs.

4.     As a result of Second Circuit opinions rendered after the October 1, 2009 orders (*Shipping Corporate of India Ltd. v. Jaldhi Oversease Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009) and *Hawknet, Ltd. v. Overseas Shipping Agencies*, 587 F.3d 127 (2d Cir. 2009)), the court determined that the attached EFT's were not, in fact, Ashapura's property.  Accordingly, on December 18, 2009, the court vacated the PMAG, released the attached funds, and dismissed the Complaint in the Underlying Action.

5.     Notwithstanding the dismissal of the Complaint in the Underlying Action, on January 8, 2010, IHX registered with the Supreme Court for the State of New York a transcript of the judgment entered in the Underlying Action.  Since then, IHX has taken additional steps toward satisfying the judgment, including serving information subpoenas and restraining notices issued under CPLR §§ 5222 and 5224 on respondent banks (SBI, Bank of India, BNP Paribas and ICICI Bank) and commencing a special proceeding under CPLR §§ 5225 and 5227 seeking a turnover order.

**BASIS FOR REMOVAL**

6.     The FSIA, 28 U.S.C. § 1602 et seq., provides that "foreign states" are immune from jurisdiction of United States courts.

7.    The FSIA defines "foreign state" as an "agency of instrumentality" of a foreign state. The FSIA further defines an "agency or instrumentality" or a foreign state as: a) an entity that is a separate legal person, corporate or otherwise; b) that is an organ of a foreign state or a political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof; and c) which is neither a citizen of a State of the United States, as defined in Section 1332(c) and (e) of Title 28, nor created under the laws of any third country. 28 U.S.C. §§ 1603 and 1604.

8.    SBI satisfies the FSIA's definition of a "foreign state": as a domestic branch of a foreign bank, it is an entity that is legally distinct from the Indian government; a majority of its shares are currently owned directly by the Indian government; it is not a citizen of a State of the United States; and it was not created under the laws of a third country.

9.    Under 28 U.S.C. § 1441(d), a "foreign state" under the FSIA may remove an action from state court to the federal district court in the district in which the state court is located.

## NOTICE AND TIMELINESS

10.    In accordance with 28 U.S.C. §1446(a), SBI annexes hereto as Exhibit A true copies of the Notice of Petition, Petition, Affidavit of Christopher Carlsen in Support of the Petition, Subpoena and Restraining Notice to Garnishee, Exemption Notice, Exemption Claim From, and Notice to Banks. These documents constitute the only process served upon SBI in this matter.

11.    In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is filed timely, having been filed within 30 days of the date Respondent was served with the Notice of Petition and Petition.

12.    In accordance with 28 U.S.C. § 1446(d), Petitioner is being served with this Notice of Removal in accordance with the annexed Certification and Affirmation of Filing and Service. In addition, a copy of this Notice of Removal is being filed with the Clerk of the Supreme Court of the State of New York, New York County.

Dated: This 21st day of January 2010
         New York, New York

                              Respectfully submitted,


                              _____
                              Tiffany E. Cale (TC-1946)
                              ROSNER & NAPIERALA, LLP
                              26 Broadway, 22nd Floor
                              New York, NY 10004
                              Telephone:  (212) 785-2577
                              Facsimile:  (212) 785-5203

                              Attorneys for State Bank of India

## CERTIFICATION AND AFFIRMATION OF FILING AND SERVICE

I, Natalie A. Napierala, hereby certify and affirm that on the 21st day of January 2010, the original Notice of Removal was filed with the United States District Court for the Southern District of New York, and a true copy of the Notice of Removal was mailed to counsel for Petitioners, addressed as follows: Christopher Carlsen, Esq., Clyde & Co US LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174.

Natalie A. Napierala

**Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
-----------------------------------------------------------------x

IHX (UK) LTD.,

                  Petitioner,

    - against -

STATE BANK OF INDIA, BANK OF INDIA,
BNP PARIBAS, and ICICI BANK

                Respondents
-----------------------------------------------------------------x

Index No.: *10600054*

**NOTICE OF PETITION**

To the Respondents named above and described, in possession of property in which judgment debtor ASHAPURA MINECHEM LTD. has an interest and against which a money judgment has been entered as further described in the Petition and accompanying affidavit.

PLEASE TAKE NOTICE that a hearing at which you must appear will be held at the Supreme Court of the County of New York, *Motion Submission* Part *Rm 130*, on *February 4, 2010* at *9:30* (am) pm on the annexed Petition which prays for a Turnover Order of such property as described therein, awarding to Petitioner IHX (UK) LTD. the possession of such property or property interest and the turn over of such property to Petitioner.

PLEASE TAKE FURTHER NOTICE that your answer may set forth any defense or counterclaim which you may have against the entry of such Order.

PLEASE TAKE FURTHER NOTICE that if you fail at such time to interpose and establish any defense that you may have to the allegations in the Petition, you may be precluded from asserting such defense or the claim on which it is based in any other proceeding or action.

TAKE NOTICE THAT your failure to appear or answer may result in final judgment for the Petitioner in the amount demanded in the Petition.

                CLYDE & CO US LLP
                Attorneys for Petitioner
                IHX (UK) LTD.

                By_____
                  Christopher Carlsen
                  The Chrysler Building
                  405 Lexington Avenue
                  New York, New York 10174
                  (212) 710-3900
                  (212) 710-3941 fax

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
-----------------------------------------------------------x
IHX (UK) LTD.,

                          Petitioner,

          - against -

STATE BANK OF INDIA, BANK OF INDIA,
BNP PARIBAS, and ICICI BANK

                        Respondents
-----------------------------------------------------------x

Index No.: *10 600054*

**PETITION PURSUANT TO
CPLR ART. 4, CPLR §§ 5222
5224, 5225, and 5227.**

       Petitioner IHX (UK) LTD., ("IHX") through its attorneys Clyde & Co US LLP, for its

Petition for relief against Respondents STATE BANK OF INDIA ("SBI"), BANK OF INDIA

("BOI"), BNP PARIBAS ("BNP"), and ICICI BANK ("ICICI"), (collectively "BANKS"), states

as follows:

       1.     At all times material hereto, IHX was and still is a foreign business entity duly

organized and existing under the laws of a foreign country with an address at 2 Brooks Street, 4th

Floor, London WS11BQ, England.

       2.     At all times relevant hereto, Respondent SBI was and still is a foreign business

entity duly organized and existing under the laws of a foreign country with an address and place

of business at 460 Park Avenue at 57th St., 2nd Fl. New York, NY 10022.

       3.     At all times relevant hereto, Respondent BOI was and still is a foreign business

entity duly organized and existing under the laws of a foreign country with an address at 277

Park Avenue, Lobby Level, New York, NY 10172-0083.

       4.     At all times relevant hereto, Respondent BNP was and still is a foreign business

entity duly organized and existing under the laws of a foreign country with an address at New

York Representative Office, 500 Fifth Avenue, Suite 2830, New York, New York 10110.

and costs (the "Judgment"). *See* Judgment attached to the Carlsen Affidavit as Exhibit "B."

12.    To date, Ashapura has not paid any portion of the Judgment.

13.    Enforcement of the Judgment in this matter has not been stayed.

14.    IHX registered a transcript of the Judgment with the Supreme Court of the State of New York, New York County, County Clerk on January 8, 2010. *See* Transcript of Judgment attached to the Carlsen Affidavit as Exhibit "C."

15.    Pursuant to CPLR § 5018, the Judgment is subject to enforcement by this Court in the same manner as a judgment entered by this Court.

16.    The last known address of Judgment Debtor Ashapura was Jeevan, Udyog Building, 3rd Floor, 278, D.N. Road, Fort, Mumbai - 400 001, India.

17.    Pursuant to CPLR §§ 5222, 5224, 5225, 5227 and/or other applicable sections of the CPLR, IXH has or shortly will serve its Subpoena and Restraining Notice upon Respondent BANKS as garnishees of Judgment Debtor Ashapura's property.

18.    IHX's Restraining Notice pursuant to CLPR § 5222 restrains such garnishees from transferring or allowing to be transferred any and all property in which Judgment Debtor Ashapura has or may have an interest, and over which the Respondent BANKS exercise possession or control, whether such property is located within or outside the State of New York, and provides that all branches of such Respondent BANKS, wherever located, shall comply with such Restraining Notice.

19.    Pursuant to IHX's Subpoenas and CPLR § 5224, garnishee Respondent BANKS shall promptly answer the subpoena served upon their New York place of business and thus inform IHX as to the property of Judgment Debtor Ashapura which they hold, the location of

New York County Clerk on January 8, 2010, with the same effect as a Judgment entered by this Court;

      b.      That this Court, pursuant to CPLR § 5225(b) and 5227, Order that Respondent BANKS turn over such property of the Judgment Debtor Ashapura as may be in their possession; and that property of the Judgment Debtor within the possession of Respondent BANKS but located outside New York State be Ordered brought into the State, and that such property be turned over to Petitioner IHX in satisfaction of the Judgment up to and including the sum of $24,157,442.00 plus costs and accruing interest;

      c.      That this Court issue an Order pursuant to CPLR 5225(c) and 5227 that Respondent BANKS are Ordered to execute and deliver any document necessary to effect payment or delivery of property of the Judgment Debtor Ashapura to Petitioner IHX up to and including the sum of $24,157,442.00 plus costs and accruing interest;

      d.      That this Court, pursuant to CPLR 5222(i), relieve Petitioner IHX of compliance with that provision and thus allow attachment of all property of Judgment Debtor Ashapura, as the protection of CPLR 5222(i) is unnecessary for the reasonable requirements of Judgment Debtor Ashapura;

      e.      That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to a further order compelling additional Respondents and/or garnishees found to be within the jurisdiction of this Court and in possession of property of the Judgment Debtor to turn over such property, wherever located, in order to satisfy the debt of Judgment Debtor Ashapura owed to Petitioner IHX; and

f.    For such other, further and different relief as this Court may deem just and proper.

Dated:  New York, New York
        January 8, 2010

                                        CLYDE & CO US LLP
                                        Attorneys for Petitioner
                                        IHX (UK) LTD.

                                        By_____
                                           Christopher Carlsen
                                           The Chrysler Building
                                           405 Lexington Avenue
                                           New York, New York 10174
                                           (212) 710-3900
                                           (212) 710-3941 fax

6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------X
IHX (UK) LTD.

               Petitioner,

      - against -

STATE BANK OF INDIA, BANK OF INDIA,
BNP PARIBAS, and ICICI BANK,

               Respondents.
--------------------------------------------------------------X

Index No. *106600054*

AFFIDAVIT OF
CHRISTOPHER CARLSEN IN
SUPPORT OF PETITION FOR
TURNOVER ORDER

Christopher Carlsen declares and states as follows:

    1.    I am a member of the law firm of Clyde & Co US LLP, attorneys for Petitioner IHX (UK) LTD. in this matter.

    2.    I submit this affidavit in support of Petitioner's application for a Turnover Order pursuant to CPLR §§ 5225(b) and 5227 directing that Respondent banking institutions STATE BANK OF INDIA, BANK OF INDIA, BNP PARIBAS, and ICICI BANK (collectively "BANKS") turn over to Petitioner such property of Judgment Debtor Ashapura Minechem Ltd. ("Ashapura") as may be in their possession, and further directing that such property of Ashapura which is in Respondents' possession but not within the State of New York and the Jurisdiction of this Court, be Ordered brought into the State and this Court's jurisdiction for turn over to Petitioner, in order to satisfy a Judgment obtained by Petitioner against Ashapura (the "Judgment").

    3.    Pursuant to CPLR §5224, the undersigned has a reasonable belief that the Respondent BANKS named herein, served or shortly to be served with a subpoena, have in their possession information about Ashapura that will assist Petitioner in collecting the Judgment.

4.      On or about March 9, 2009, Petitioner commenced arbitration in London against Ashapura in connection with Ashapura's breach of a maritime contract of affreightment.

5.      Petitioner prevailed in the London arbitration and was awarded the principal sum of $24,157,442.00, plus interest and costs.  A true and accurate copy of the Final Arbitration Award issued in favor of Petitioner and against Ashapura is attached as Exhibit "A" hereto.

6.      On October 1, 2009, the United States District Court for the Southern District of New York recognized and confirmed the Final Arbitration Award and, on the same day, entered the Judgment in favor of Petitioner and against Ashapura in the amount of $24,157,442, plus interests and costs. A true and accurate copy of the Judgment is attached as Exhibit "B" hereto.

7.      To date, Ashapura has not paid any portion of the Judgment.

8.      Enforcement of the Judgment has not been stayed.

9.      IHX registered a transcript of the Judgment with the Supreme Court of the State of New York, New York County, County Clerk on January 8, 2010.  A true and accurate copy of the Transcript of Judgment is attached as Exhibit "C" hereto.

10.     Pursuant to CPLR § 5018, the Judgment is subject to enforcement by this Court in the same manner as a judgment entered by this Court.

11.     The last known address of Judgment Debtor Ashapura was Jeevan, Udyog Building, 3rd Floor, 278, D.N. Road, Fort, Mumbai - 400 001, India.

12.     Petitioner respectfully requests that this Court issue a Turnover Order directing the Respondent BANKS to turn over to Petitioner such property of the Judgment Debtor Ashapura as is within their possession, and directing that such property within their possession but located outside of the State of New York be brought into the State and this Court's

jurisdiction, for turn over to Petitioner, in order to satisfy the Judgment.

_____
Christopher Carlsen

Sworn to before me this 8th day of January, 2010

_____
Notary Public

CONNIE LEE
NOTARY PUBLIC, State of New York
No. 01LE50225914
Qualified in Kings County
Commission Expires April 4, 2010

**EXHIBIT A**

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

B E T W E E N

Claimants:

IHX (UK) Limited of London

(Owners)

and

Respondents:

Ashapura Minechem Limited of Mumbai

(Charterers)

Contract of Affreightment dated 25th October 2007 and

Addendum dated 24th November 2007

FINAL ARBITRATION AWARD

2

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

B E T W E E N

Claimants:

IHX (UK) Limited of London

(Owners)

and

Respondents:

Ashapura Minechem Limited of Mumbai

(Charterers)

Contract of Affreightment dated 25th October 2007 and

Addendum dated 24th November 2007

FINAL ARBITRATION AWARD

WHEREAS:

1. By a Contract of Affreightment on the GENCON 1976 form charterparty, incorporating additional terms as agreed between the parties on or about 25th October 2007 ("the COA"), the Claimants ("the Owners") agreed to load and carry and the Respondents ("the Charterers") agreed to provide minimum six shipments, each of about 45,000 to 50,000 mt of bulk bauxite, annually between

3

January 2008 and December 2010, from various load ports in the state of Gujarat India for discharge at various ports in China at a freight rate of US$32.00 per m.t. FIOT. On or about 24th November 2007, the parties agreed an addendum to the COA whereby the number of annual shipments was increased to minimum ten, with the Owners having an option for one additional shipment and the freight rate was amended to US$32.00 per mt for the first seven shipments of each year and thereafter US$30.00 for the remaining shipments.

2. Clause 28 of the COA provided for arbitration in London in accordance with English law as follows:

> "*Any dispute arising under this C.O.A. is to be settled and referred to Arbitration in London. One Arbitrator to be employed by the Charterers and one by the Owners and in case they shall not agree then shall appoint an Umpire whose decision shall be final and binding, the Arbitrators and Umpire to be Commercial Shipping Men. English Law to apply ... "*

3. Following a dispute between the parties, the Owners appointed me, Alan Oakley of Hoy's Farm, Upwick, Ware, Hertfordshire, to act as arbitrator and called upon the Charterers to appoint an arbitrator. However, despite being given notices in accordance with Sections 16 and 17 of the Arbitration Act 1996, the Charterers failed to nominate an arbitrator. Therefore, on 9th March 2009, the Owners appointed me sole arbitrator in the reference. I am a commercial shipping man as required by the arbitration clause. I am also a full member of the London Maritime Arbitrators Association, a member of the Baltic Exchange in the City of London and a Fellow of the Chartered Institute of Shipbrokers.

4

4.  On 11th May 2009, the Owners served claim submissions and claimed the sum of US$20,409,451.00, together with interest and costs. However, on 13th May 2009, the Owners served amended claim submissions whereby they claimed the overall sum of US$24,694,942.00, together with interest and costs.

5.  On 20th May 2009, I sent a message to the parties where I referred to the Owners' amended claim submissions and ordered the Charterers to serve their defence submissions, together with any counterclaim submissions, on or before 19th June. I also explained to the Charterers that if they had any questions regarding the arbitration procedure, they were free to contact me (provided they copied the Owners' solicitor). This order was sent to the Charterers by email, fax and post. Whilst the email was rejected, the fax was delivered successfully. Similarly, I have no reason to believe that the copy sent by mail was not delivered to the Charterers.

6.  However, the Charterers failed to comply with the order or contact me. Therefore, on 24th June 2009, I made another order which required the Charterers to serve their defence submissions by latest 29th June. The terms of the order made it clear that if the Charterers failed to comply within the time limit set down I would issue a final and peremptory order which would include severe sanctions in the event of non-compliance. This order was also sent to the Charterers by fax and post. However, the Charterers again failed to comply with the order and, on 1st July, I made a final and peremptory order that the Charterers should serve their defence submissions by latest 6th July. The terms of my order made it clear that if the Charterers failed to comply, I would make my award without further reference to them. Since my order was incorrectly dated, a revised draft of the message showing the correct date of 1st July 2009, was successfully sent to the Charterers by fax at 12:47 London time on 2nd July. However, despite this warning, the Charterers failed to serve

5

defence submissions or communicate with me. On 7th July 2009, I notified the parties that I was proceeding to my award.

7.  The Owners were represented Clyde & Co, Hong Kong. The Charterers were not represented and communications were sent to their fax number at + 91 22 2207 9395 and their postal address at Jeevan Udyong Building, 278 D N Road, Fort, Mumbai 400 001, India.

8.  Neither party requested an oral hearing.

9.  The reasons for my award are attached hereto and form part of this Arbitration Award.

NOW I, the said Alan Oakley having taken upon myself the burden of this reference and having carefully and conscientiously considered the evidence and submissions put before me by the Owners DO HEREBY MAKE, ISSUE AND PUBLISH this my FINAL ARBITRATION AWARD as follows:

I FIND AND HOLD that the Owners' claim succeeds in the sum of US$24,157,442 and no more.

I THEREFORE AWARD AND DIRECT that:

A)  the Charterers shall forthwith pay the Owners the sum of US$24,157,442.00 (twenty-four million, one hundred and fifty-seven thousand, four hundred and forty-two United States dollars), together with interest thereon payable at the U.S. Prime rate plus 2% per annum or pro rata, compounded at three monthly rests from the date of this award, until the date of payment;

6

B)   the Charterers shall bear their own costs and shall pay the Owners'
recoverable costs of this Final Arbitration Award on the standard basis
which, unless agreed shall, in the Owners' option, be assessed by the
English High Court or by me in an Award on Costs, pursuant to Section
63(3) of the Arbitration Act 1996, on the basis set out in Section 63(5)
of the Act, for which purpose I hereby reserve my jurisdiction;

C)   the Charterers shall also bear the costs of this Arbitration Award in the
sum of £5,000 provided that if, in the first instance, the Owners shall
have paid any amount in respect of such costs, they shall be entitled to
an immediate refund of that amount from the Charterers; and

D)   the Charterers shall also pay interest on the Owners' costs awarded in
paragraph B above and on any sum paid by the Owners in respect of the
costs of this Arbitration Award set out in paragraph C above at the rate
of 4.5% per annum compounded at three-monthly rests from the date
hereof until payment, in respect of the Owners' costs, and from the date
of any payment to me by the Owners, in respect of the costs hereof,
until reimbursement of such sum by the Charterers.

THIS ARBITRATION AWARD is interim in the reference, however
final as to matters decided herein. I reserve my jurisdiction to make
further Award(s) in respect of matters not dealt with herein.

Given under my hand in London this 8th day of July 2009.

Alan Oakley                                        Witness

7

Contract of Affreightment dated 25th October 2007 and

Addendum dated 24th November 2007

REASONS FOR MY FINAL ARBITRATION AWARD

### (I) The C.O.A.

1. By a Contract of Affreightment agreed between the parties on or about 25th October 2007, the Claimants ("the Owners") agreed to load and carry and Charterers agreed to provide minimum six shipments of between 45,000 and 50,000 mt (each shipment being 10% more or less in the Owners' option) of bulk bauxite annually between January 2008 and December 2010 from various load ports in the state of Gujarat India for discharge at various ports in China at a freight rate of US$32.00 per m.t. On or about 24th November 2007, the parties agreed an addendum whereby the number of annual shipments was increased to minimum ten, with the Owners' option for one additional shipment and the freight rate was amended to US$32.00 per mt FIOT for the first seven shipments each year and US$30.00 for the balance. I shall refer to the Contract of Affreightment and the Addendum collectively as "the COA".

2. The background to the dispute was that the Charterers performed the first three voyages under the COA, but failed to provide any shipments thereafter. The Owners alleged that the Charterers were therefore in repudiatory breach of the COA and claimed damages in the amended sum of US$24,644,942.00. The Owners also made a claim for the sum of US$50,000.00 in

8

respect of the outstanding balance of accounts in respect of the third shipment.

**(II) The Charterers' repudiatory breach of the COA:**

3.  The Owners alleged that the Charterers were in repudiatory breach of the COA and claimed the sum of US$24,644,942.00, alternatively damages.

4.  The Charterers failed to participate in these arbitral proceedings. However, I am satisfied that they have been given every opportunity to participate and to deny the allegations made against them, but have chosen not to do so. Despite the Charterers' failure to provide defence submissions, the Owners have been put to strict proof of their claim.

5.  First, it is helpful if I mention that the Owners provided copies of the Contract of Affreightment and the Addendum, both of which were signed by the same Director from the Charterers. The Charterers' company stamp also appeared at the bottom of each page of the Contract of Affreightment, i.e. on the Gencon charterparty form. Both documents were also signed by the Owners.

6.  The background to this part of the dispute was that the first three shipments under the quota for 2008 were performed in accordance with the terms of the COA, with the vessels "DING XIANG HAI, "BAY RANGER" and "TEEN". Thereafter, the Owners nominated vessels to perform the fourth, fifth, sixth and seventh shipments under the 2008 quota. However, the Charterers failed to perform any of these shipments, blaming a policy decision made by the Government of Gujarat (hereinafter referred to as the "local government") who they

8

respect of the outstanding balance of accounts in respect of the third shipment.

**(II) The Charterers' repudiatory breach of the COA:**

3. The Owners alleged that the Charterers were in repudiatory breach of the COA and claimed the sum of US$24,644,942.00, alternatively damages.

4. The Charterers failed to participate in these arbitral proceedings. However, I am satisfied that they have been given every opportunity to participate and to deny the allegations made against them, but have chosen not to do so. Despite the Charterers' failure to provide defence submissions, the Owners have been put to strict proof of their claim.

5. First, it is helpful if I mention that the Owners provided copies of the Contract of Affreightment and the Addendum, both of which were signed by the same Director from the Charterers. The Charterers' company stamp also appeared at the bottom of each page of the Contract of Affreightment, i.e. on the Gencon charterparty form. Both documents were also signed by the Owners.

6. The background to this part of the dispute was that the first three shipments under the quota for 2008 were performed in accordance with the terms of the COA, with the vessels "DING XIANG HAI, "BAY RANGER" and "TEEN". Thereafter, the Owners nominated vessels to perform the fourth, fifth, sixth and seventh shipments under the 2008 quota. However, the Charterers failed to perform any of these shipments, blaming a policy decision made by the Government of Gujarat (hereinafter referred to as the "local government") who they

9

asserted had imposed an embargo on the sale and export of bauxite from the state of Gujarat. The Charterers had advised the Owners that as a result of that decision, they had taken legal action against the Gujarat government in the local courts. However, when the Owners requested a copy of the judgement handed down by the Gujarat Court, the Charterers refused to provide a copy of the Court's decision.

7. On 30th September 2008, the Charterers sent the following message to the Owners:

> "SUB:IHX/A.M.L., C.O.A. DATED 25TH OCTOBER, 2007 & ADDENDUM NO.1 DATED 24TH NOV. 2007
>
> We refer to our previous messages and conversations concerning above.
>
> As you know, an unexpected problem has arisen which is that the Government of Gujarat has interfered with the export of bauxite. You are familiar with the story and the upshot is that there is basically no cargo coming out of Gujarat. There is a very small amount around but not enough to constitute the quantities envisaged under the COA.
>
> The situation is not of our making. It is not our fault and we are not in breach. We have been doing what we can in an effort to get back to where things were before the GoG changed the rules of engagement. As we have told you, there have been good reasons to think that a solution is imminent but we have now reluctantly come to the conclusion that a solution is not close at hand after all and is likely to go on for a very long time.

10

*The situation amounts to frustration/force majeure and we therefore give you formal notice that we regard the COA as terminated by reason of force majeure/frustration. The problems caused by the GoG's intervention first happened in June 2008 so we must conclude that the contract stands terminated as from then.*

*We should perhaps say that we could possibly assemble sufficient cargo at the loadport to present a lifting to you. The problem, however, is that the authorities would not give it an export permissions. If you were to nominate a vessel for this, and we were to accept, you would then find your ship at the loadport but with laytime not running by virtue of clause 19 para 6. The ship could be required to wait indefinitely on this basis. This would be highly unsatisfactory for you and points up the frustration/force majeure of the situation.*

*It is a shame that this has happened because we were looking forward to a long and enjoyable working relationship with you. We hope that we will be in a position to do business with you again in the future.*

*If you would like to discuss any of the above with us do please let us know – we are at your disposal".*

8. On 3rd October 2008, the Owners replied to the Charterers stating that they did not accept that there had been frustration of the COA or that the force majeure clause in the COA applied. The Owners went on to set out the background to the dispute and then stated as follows:

11

> "... *by your message dated 30th September 2008, you evince a*
> *clear intention not to perform the COA and/or declare that you*
> *are and/or will be able to perform the COA. This amounts to a*
> *renunciation and/or anticipatory breach of the COA.*
> *We hereby accept your repudiation and/or renunciatory breach*
> *of the COA. The COA has accordingly come to an end. We will*
> *claim against you for all loss and damage suffered by us. ..."*

9. It was therefore the Owners' case that on 3rd October 2008, they had accepted the Charterers' repudiatory and/or denunciatory breaches thus bringing the COA to an end. The Owners claimed that the Charterers have not provided any evidence that the local government had imposed an embargo on the sale and/or export of bauxite from the state of Gujarat. Therefore, the Charterers had not established that the COA was frustrated or that force majeure applied.

10. Although the Charterers have not participated in these proceedings, in their message to the Owners of 30th September 2008, they referred to defences under the doctrine of frustration and/or that there was a force majeure event which brought the COA to an end. I shall therefore consider these defences in more detail despite the fact that the Charterers have chosen not to provide defence submissions when invited/ordered to do so.

11. In order for a respondents' defence under the doctrine of frustration to succeed, they bear the burden of showing that it was "impossible" for them to perform the contract. It is therefore helpful if I provide the definition of frustration as quoted in Chitty on Contracts at paragraph 23-001 of the 29th edition:

> "*Introduction. A contract may be discharged on the ground of*
> *frustration when something occurs after the formation of the*

12

> contract which renders it physically or commercially impossible
> to fulfil the contract or transforms the obligation to perform
> into a radically different obligation from that undertaken at the
> moment of entry into the contract".

12. I shall also refer to paragraph 23-007 of Chitty and the second test for
frustration:

> "*Secondly, frustration operates to 'kill the contract and
> discharge the parties from further liability under it' and that
> therefore it cannot be 'lightly invoked' but must be kept within
> very narrow limits and ought not to be extended*".

13. Therefore, frustration operates to kill the contract and discharge the
parties from further liability. However, the party wishing to rely on
frustration as a defence bears the burden of proving that the contract
cannot be performed. As Chitty makes clear, the defence of
frustration cannot be lightly invoked. However, in this case, although
the Charterers alleged that the local government imposed an embargo
on the sale and/or export of bauxite from the state of Gujarat, they
have not provided the Owners or this tribunal with any evidence to
support their claim. Had the Charterers' allegations had any substance
to them, it would have been a simple matter for them to provide
supporting evidence. The local government would undoubtedly have
issued a formal directive. Furthermore, Court documents relating to
the proceedings taken against the local government should also have
supported the Charterers' case. The fact that the Charterers have
failed to provide such evidence suggests to me that the local
government did not impose the embargo as alleged. Furthermore, I
suspect that if the Charterers did take legal action against the local
government (and there is no evidence that they did), they were

13

unsuccessful and the Court's decision did not support their case in these proceedings.

14. In conclusion, I have no hesitation in finding that the Charterers have no defence under the doctrine of frustration.

15. I now turn to the possible defence that there was a force majeure event which brought the COA to an end. Normally, the parties would refer me to the relevant provision in the contract. However, given the Charterers' failure to participate in these proceedings, I did not have the benefit of any guidance in this regard. However, the only provision for force majeure that I could find in the COA was in the final paragraph of clause 20. However, this paragraph relates to the effect of a force majeure events on laytime and demurrage and clearly does not extend to the type of event on which the Charterers' relied, namely an embargo imposed by a local government which brought the COA to an end. Therefore, the Charterers' reliance on force majeure to bring the COA to an end appears to fail at the first hurdle since there is no applicable provision in the COA. The final paragraph of clause 20 of the COA provides as follows:

> "In case any acts of God, riots, civil commotions, fire or any other causes comprehend in the Force Majeure terms which may delay or prevent or provide the cargo at the port of load/discharging of the cargo, such time lost is not to count as laytime as neither Charterers nor Shipper nor Supplier nor Receivers shall be liable for any loss of demurrage unless Vessel already on demurrage. Once on demurrage always on demurrage".

16. I shall, however, refer to the general principles of force majeure. The definition of force majeure is that it is "superior force" which affects

the performance of the contract. Therefore, subject to the provisions of a particular contract, it could be argued that a government ban might constitute a force majeure event which would render the contract at an end. However, the party wishing to rely on the force majeure defence bears the burden of showing that the event upon which they rely, which in this case would be the embargo imposed by the local government, actually came into force and that it prevented them from performing the contract. However, as with the defence of frustration, the Charterers have failed to provide any evidence to show that the local government imposed an embargo on the sale and/or export of bauxite from the state of Gujurat which prevented them from performing the COA.

17. I therefore have no hesitation in finding that the Charterers have failed to show that there was a force majeure event which brought the COA to an end.

18. In conclusion, having carefully considered the evidence available to me, I am satisfied that the Charterers have failed to show that they have a *bona fide* defence for failing to perform the COA after the third shipment in 2008. Therefore, given their message of 30th September 2008, they were in repudiatory and/or renunciatory breach of the COA when they failed to provide any shipments after the nomination of the third vessel under the 2008 quota. Therefore, on 3rd October 2008, the Owners were entitled to accept the Charterers' repudiatory and/or renunciatory breaches thus bringing the COA to an end. It follows that the Charterers are liable for the Owners' proven damages.

19. I now turn to the matter of damages under this head of claim. The Owners provided a schedule of their losses relating to each unperformed shipment from May 2008 to December 2010 and

15

calculated total damages of US$24,644,942 ("the Owners' schedule") - which related to thirty shipments. In circumstances where the Charterers have chosen not to participate in these arbitral proceedings it is impossible for me to know whether they disagree with the Owners' calculation of damages, if at all. It is not my role to investigate such matters where the Charterers have clearly chosen not to do so. However, having carefully scrutinised the Owners' schedule, it appears to me that it has been formulated on a proper basis against the time charter equivalents for each shipment. I accordingly accept the Owners' manner of calculation of their damages and have made my award in accordance with that method.

20. The Owners' schedule used the Baltic Exchange Index BSI R7 (being East Coast India to China) as the basis of the calculation for damages against daily time charter equivalent rates of US$48,152 for the fixed cargoes each year and US$44,451 for the optional cargoes. As a commercial shipping man (as I am required to be under the arbitration clause) I can easily reconcile these time charter rates against the respective voyage rates payable under the COA. I am therefore satisfied that the Owners' overall loss amounts to US$24,644,942 in accordance with the summary set out in their schedule.

21. However, given that damages have been assessed for shipments which should have been performed between May 2008 and December 2010, the issues arise as to how I should deal with interest and the early payment of damages, especially in respect of the latter shipments under the COA. In effect, the two issues are connected and I shall therefore deal with them in the following way.

22. First, I shall award interest on the overall sum awarded from the date of this award until the date of payment, payable at the U.S. Prime

16

rate plus 2% per annum or pro rata, compounded at three monthly rests until the date of payment. However, I shall leave open the issue of whether interest is payable on any sum or sums prior to the date of this award given that the calculation of interest generally is extremely complex where the quantum of the claim increases with each shipment and where many shipments would be performed after this award is published.

23. Secondly, having looked at the issue of the early payment of damages I take the view that a discount should be applied. Such discount does not apply to the element of damages awarded in respect of the shipments that would have been performed before publication of this award since in those cases there has been no early payment of damages: though an issue does arise as to how interest should be applied to those damages, which I have referred to in paragraph 22 above. However, I consider that a discount should be applied in respect of damages amounting to almost US$15,000,000 in respect of some 15 to 17 shipments which should have been provided by the Charterers between August 2008 and December 2010, i.e. after publication of this award. That said, I realise that numerous factors are relevant to the calculation and for this reason consider that it is most probably impossible to be exact with such a calculation. However, I consider that the benefit to the Owners for early payment over and above what would truly compensate them was in the order of US$540,000 (US$15,000,000 which would have been earned over the next 17 months x 5% per annum prorated, divided by 2 to give the mean of the period). I consider that this calculation favours the Charterers. I have therefore discounted my award by this amount, producing a figure of US$24,104,942 (US$24,644,942 less US$540,000).

17

### (III) Balance of accounts for the third shipment:

24. The Owners claimed the sum of US$50,000 being the balance of accounts for the third shipment under the 2008 quota i.e. the shipment on the "TEEN".

25. The Owner's evidence was that the final balance of accounts for this shipment showed that they were owed US$156,134.26. This sum included demurrage earned at the load port of US$176,250 and despatch paid at the discharge port of US$22,291. However, the Charterers disputed the overall sum due to the Owners and, on 14th October 2008, offered to pay US$100,000 in full and final settlement of the "TEEN" accounts. On 24th November 2008, the Owners accepted the Charterers' offer and on 4th May 2009, the Owners received €36,742.38 from the Charterers in part payment, which the Owners said was equivalent to US$50,000.

26. The Owners therefore sought to recover the outstanding balance of US$50,000 (US$100,000 less US$50,000).

27. The Owners provided copies of relevant correspondence showing both the Charterers' offer and their acceptance of settling this matter in the amount of US$100,000. Since the evidence is that the Charterers have only paid the equivalent of US$50,000 I find that the Charterers are liable for the balance as claimed. I have therefore awarded the Owners the sum of US$50,000.

28. Given the current exchange rate of 0.718995 US dollars/Euro, I am prepared to accept the Owners' evidence that €36,742.38 was the equivalent to US$50,000 on the date of payment.

29. I have also awarded interest under this head of claim as follows:

18

i)  on the sum of US$100,000 from 4th December 2008, by which
    date the Charterers should have paid the agreed sum, to 4th May
    2009, when the Charterers paid one-half of the amount due, which
    I have calculated in the sum of US$2,084 (US$100,000 x 5% per
    annum x 5 months);

ii) on the sum of US$50,000 from 5th May 2009, to the date of this
    award, which I have calculated in the sum of US$416 (US$50,000
    x 5% per annum x 2 months);

I have therefore awarded interest under this head of claim amounting
to US$2,500 (US$2,084 plus US$416) up to the date of this award;
and

30. Finally, I have awarded interest on the sum of US$52,500
    (US$50,000 being the balance of accounts plus US$2,500 being
    interest) from the date of this award, to the date of payment, at a
    commercial rate.

**(IV) Quantum:**

31. In summary, the Owners' claims have been successful as follows:

| | |
|---|---|
| - damages due to the Charterers' breach | US$24,644,942.00 |
| - "Teen" final accounts | US$  50,000.00 |
| - interest on the "Teen" accounts* | US$   2,500.00 |
| | |
| Less | |
| - the discount for accelerated payment | (US$  540,000.00) |
| | ---------------------- |
| - Total due to Owners | US$24,157,442.00 |

19

I have therefore awarded the Owners the sum of US$24,157,442.00, together with interest on this sum, at a commercial rate from the date of this award, until the date of payment.


**(V) Costs:**

32. In accordance with the normal rule that costs follow the event, the Charterers shall bear their own and the Owners' recoverable costs of this Final Arbitration Award. The Charterers shall also bear my costs.

+++

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

B E T W E E N

Claimants

IHX (UK) Limited of London

(Owners)

and

Respondents

Ashapura Minechem Limited of Mumbai

(Charterers)

Contract of Affreightment dated 25th October 2007

and Addendum dated 24th November 2007

FINAL ARBITRATION AWARD

**EXHIBIT B**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/1/09_

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

IHX (UK) LTD.,

                Petitioner,

        -against-

ASHAPURA MINECHEM LIMITED,

                Respondent.

-------------------------------------------------------X

08 **CIVIL** 9436 (SAS)

# JUDGMENT

#09,1876

       Petitioner having moved to confirm a foreign arbitral award entered against Respondent in the amount $24,157,422.00, and the matter having been brought before the Honorable Shira A. Scheindlin, United States District Judge, and the Court, on October 1, 2009, having issued its Memorandum Opinion and Order granting IHX's motion to confirm the foreign arbitral award, and directing the Clerk of the Court to prepare a final judgment consistent with the Memorandum Opinion and Order dated October 1, 2009, it is,

       **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion and Order dated October 1, 2009, IHX's motion to confirm the foreign arbitral award is granted, and final judgment is entered in favor of petitioner against respondent in the amount of $24,157,442.00, plus interest and costs; accordingly, the case is closed.

**Dated:** New York, New York
       October 1, 2009

                       **J. MICHAEL MCMAHON**

                            **Clerk of Court**

BY:

                            **Deputy Clerk**

                    **THIS DOCUMENT WAS ENTERED**
                    **ON THE DOCKET ON _____**

**EXHIBIT C**

01/08/2010

TRANSCRIPT OF JUDGMENT - NO.   09-10/0

| | Dates | Attorney | Names of Parties against whom judgment has been obtained | Names of Parties in whose favor judgment has been obtained | Amount | Costs | When Satisfied |
|---|---|---|---|---|---|---|---|
| How Obtained: Judgment | Signing: 10/02/2009  Filing: 10/02/2009 | Christopher Carlson Clyde + Co US LLP 405 Lexington Ave., 11th Floor New York, NY 10174 | ASHA MINECHEM LIMITED Jeevan Udya Building 3rd Floor 278 Dr. D.N. Road Fort-Mumbai India 400 601 | HLX (UK) LTD. 2 Brooks St. 4th Floor London W15 4 BQ United Kingdom | $24,157,442.00 | $0.00 | |
| 08 CV 9436 SAS | | | | | | | |
| JUDGMENT | | | | | | | |

2010 JAN -8 AM 11:48

FILED COUNTY CLERK N.Y. COUNTY

I, J. Michael McMahon, Clerk of the United States District Court for the Southern District of New York, do hereby certify that the foregoing is a true and correct transcript from the Docket of Judgments kept in my office and that the above judgment has not been satisfied of record.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court this 8 day of January, two thousand

J. Michael McMahon, Clerk

by _____
                    Deputy Clerk

- SL -

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

IHX (UK) LTD.,

Petitioner,

-against-

ASHAPURA MINECHEM LIMITED,
Respondent.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/1/09_

08 **CIVIL** 9436 (SAS)

**JUDGMENT**

#09/1876

Petitioner having moved to confirm a foreign arbitral award entered against Respondent in the amount $24,157,422.00, and the matter having been brought before the Honorable Shira A. Scheindlin, United States District Judge, and the Court, on October 1, 2009, having issued its Memorandum Opinion and Order granting IHX's motion to confirm the foreign arbitral award, and directing the Clerk of the Court to prepare a final judgment consistent with the Memorandum Opinion and Order dated October 1, 2009, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion and Order dated October 1, 2009, IHX's motion to confirm the foreign arbitral award is granted, and final judgment is entered in favor of petitioner against respondent in the amount of $24,157,442.00, plus interest and costs; accordingly, the case is closed.

**Dated:** New York, New York
October 1, 2009

J. MICHAEL MCMAHON

Clerk of Court

BY:

Deputy Clerk

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____

## SUBPOENA AND RESTRAINING NOTICE TO GARNISHEE

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
-----------------------------------------------------------x

IHX (UK) LTD.,

                         Petitioner,

      - against -

STATE BANK OF INDIA, BANK OF INDIA,
BNP PARIBAS, and ICICI BANK,

                         Respondents
-----------------------------------------------------------x

Index No.: *10600054*

**SUBPOENA AND
RESTRAINING NOTICE
PURSUANT TO CPLR §§ 5222
AND 5224.**

THE PEOPLE OF THE STATE OF NEW YORK TO STATE BANK OF INDIA, 460 PARK AVENUE at 57th St., NEW YORK, NY 10022, AS GARNISHEE.

Whereas, in action in the United States District Court for the Southern District of New York, between IHX (UK) LTD. as plaintiff and ASHAPURA MINECHEM LTD, a Judgment was entered against ASHAPURA MINECHEM LTD on October 1, 2009 in favor of IHX (UK) LTD. as judgment creditor and against ASHAPURA MINECHEM LTD as judgment debtor in the amount of $24,157,442.00 plus interest and costs, all of which remains due and unpaid; and

Whereas the judgment of the United States District Court for the Southern District of New York was filed with the County Clerk for New York County on January 8, 2010 and is subject to enforcement under CPLR 5018 as a Judgment of the Supreme Court of the State of New York, County of New York;

NOW, THEREFORE WE COMMAND YOU, that you answer in writing under oath, separately and fully, each question in the questionnaire accompanying this subpoena, each answer referring to the question to which it responds; and that you return the answers together with the original questions within 7 days after your receipt of the questions and this subpoena to the Law Offices of Clyde & Co US LLP, 405 Lexington Avenue, 11th Floor, New York, New York 10174.

**TAKE NOTICE** that false swearing or failure to comply with this subpoena is punishable by contempt of court.

162962v1

**I HEREBY CERTIFY** that this information subpoena complies with Rule 5224 of the Civil Practice Law and Rules and that I have a reasonable belief that the party receiving this subpoena has in their possession information about the debtor that will assist the creditor in collecting the judgment.

## RESTRAINING NOTICE

**WHEREAS**, it appears that you owe a debt to the judgment debtor or are in possession or in custody of property in which the judgment debtor has an interest.

**TAKE NOTICE** that pursuant to CPLR 5222(b), which is set forth in full herein, you are hereby **FORBIDDEN** to make or suffer any sale, assignment or transfer of, or any interference with any property in which you have an interest, except as therein provided.

**TAKE FURTHER NOTICE** that this notice also covers **ALL PROPERTY** in which the judgment debtor has an interest hereafter coming into your possession or custody, and all debts hereafter coming due from you to the judgment debtor.

**TAKE FURTHER NOTICE** that this restraint includes **ALL PROPERTY, WHEREVER LOCATED** in which the judgment debtor has an interest which is in your possession, control and/or custody.

**TAKE FURTHER NOTICE** that disobedience of this Restraining Notice is punishable as a contempt of court.

### CIVIL PRACTICE LAW AND RULES

5222(b) Effect of restraint; prohibition of transfer; duration. A judgment debtor or obligor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated. A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest, or if the judgment creditor or support collection unit has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served. All property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor, shall be subject to the notice except as set forth in subdivisions (h) and (i) of this section. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any

such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs. A judgment creditor or support collection unit which has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor or obligor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor or obligor in an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money.

## SUBPOENA

**YOU ARE COMMANDED TO PRODUCE THE FOLLOWING INFORMATION AND DOCUMENTS.**

The Respondent Garnishee Bank is commanded to produce the following information. That property of Judgment Debtor ASHAPURA MINECHEM LTD or property in which it has an interest is not located within the State of New York is of no moment to the information sought. Thus the Respondent Garnishee Bank must include in its answers to the subpoena all property interests located outside the State of New York, all property interests located anywhere in the world, and all property interests for which a precise situs is not known or established, in response to the following:

1. A list of all bank accounts of Judgment Debtor ASHAPURA MINECHEM LTD or in which ASHAPURA MINECHEM LTD has an interest, wherever found, the location of those bank accounts, the amount in said accounts, the interest rate on such account.

2. A list of all debts or credits due, owing, or which will become due or owing Judgment Debtor ASHAPURA MINECHEM LTD, wherever found, the location of those debts or credits, the amount of the debt or credit, the date and time at which such debt or credit will be payable to ASHAPURA MINECHEM LTD. The foregoing includes, but is in no way limited to, all forms of instruments, certificates of deposit, loan, mortgages, stock certificates, partnership interests, corporate shares, joint venture accounts or assets, and any other property in which Judgment Debtor ASHAPURA MINECHEM LTD has an interest.

3. A list of all real, personal, tangible and intangible property interests in which Judgment Debtor ASHAPURA MINECHEM LTD has an interest, wherever found, including, but is in no way limited to, collateral for any mortgage or debt instrument, whether real or personal, the location of such property, the value of such property interest, and associated interest and title information for such property interest.

3

I HEREBY CERTIFY THAT THIS INFORMATION SUBPOENA COMPLIES WITH RULE 5224 OF THE CIVIL PRACTICE LAW AND RULES AND THAT I HAVE A REASONABLE BELIEF THAT THE PARTY RECEIVING THIS SUBPOENA HAS IN THEIR POSSESSION INFORMATION ABOUT THE DEBTOR THAT WILL ASSIST THE CREDITOR IN COLLECTING THE JUDGMENT.

CLYDE & CO US LLP
Attorneys for Plaintiff
IHX (UK) LTD.

By_____
    Christopher Carlsen
    The Chrysler Building
    405 Lexington Avenue
    New York, New York 10174
    (212) 710-3900
    (212) 710-3941 fax

## EXEMPTION NOTICE
### as required by New York Law
### YOUR BANK ACCOUNT IS RESTRAINED OR "FROZEN"

The attached Restraining Notice or notice of Levy by Execution has been issued against your bank account. You are receiving this notice because a creditor has obtained a money judgment against you, and one or more of your bank accounts have been restrained to pay the judgment. A money judgment is a court's decision that you owe money to a creditor. You should be aware that FUTURE DEPOSITS into your account(s) might also be restrained if you do not respond to this notice.

You may be able to "vacate" (remove) the judgment. If the judgment is vacated, your bank account will be released. Consult an attorney (including free legal services) or visit the court clerk for more information about how to do this. Under state and federal law, certain types of funds cannot be taken from your bank account to pay a judgment. Such money is said to be "exempt."

DOES YOUR BANK ACCOUNT CONTAIN ANY OF THE FOLLOWING TYPES OF FUND?

1. Social security;
2. Social security disability (SSD);
3. Supplemental security income (SSI);
4. Public assistance (welfare);
5. Income earned while receiving SSI or public assistance;
6. Veterans benefits;
7. Unemployment insurance;
8. Payments from pensions and retirement accounts;
9. Disability benefits;
10. Income earned in the last 60 days (90% of which is exempt);
11. Workers' compensation benefits;
12. Child support;
13. Spousal support or maintenance (alimony);
14. Railroad retirement; and/or
15. Black lung benefits.

If YES, you can claim that your money is exempt and cannot be taken.
To make the claim, you must

(a) complete the EXEMPTION CLAIM FORM attached;
(b) deliver or mail the form to the bank with the restrained or "frozen" account; and
(c) deliver or mail the form to the creditor or its attorney at the address listed on the form.

You must send the forms within 20 DAYS of the postmarked date on the envelope holding this notice. You may be able to get your account released faster if you send to

5

the creditor or its attorney written proof that your money is exempt. Proof can include an award letter from the government, an annual statement from your pension, pay stubs, copies of checks, bank records showing the last two months of account activity, or other papers showing that the money in your bank account is exempt. If you send the creditor's attorney proof that the money is your account is exempt, the attorney must release that money within seven days. You do not need an attorney to make an exemption claim using the form.

# EXEMPTION CLAIM FORM

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

------------------------------------------------------------x

IHX (UK) LTD.,

                              Petitioner,

      - against -

STATE BANK OF INDIA, BANK OF INDIA.

                          Respondents

------------------------------------------------------------x

Index No.: _____

**EXEMPTION CLAIM FORM**

| NAME AND ADDRESS OF JUDGMENT CREDITOR OR ATTORNEY | NAME AND ADDRESS OF FINANCIAL INSTITUTION |
|---|---|
| ADDRESS | ADDRESS |
| A.    Christopher Carlsen, Esq. <br> Clyde & Co US LLP <br> 405 Lexington Avenue, 11th Fl. <br> New York, NY 10174 | B.    State Bank of India <br> 460 Park Avenue at 57th St., 2nd Fl. <br> New York, NY 10022 |

Directions:  To claim that some or all of the funds in your account are exempt, complete both copies of this form, and make one copy for yourself.  Mail or deliver one form to ADDRESS A and one form to ADDRESS B within twenty days of the date on the envelope holding this notice.

** If you have any documents, such as an award letter, an annual statement from your pension, pay stubs, copies of checks or bank records showing the last two months of account activity, include copies of the documents with this form.  Your account may be released more quickly.

I state that my account contains the following type(s) of funds (check all that apply):

___Social security
___Social security disability (SSD)
___Supplemental security income (SSI)
___Public assistance
___Wages while receiving SSI or public assistance
___Veterans benefits
___Unemployment insurance
___Payments from pensions and retirement accounts
___Income earned in the last 60 days (90% of which is exempt)
___Child support
___Spousal support or maintenance (alimony)
___Workers' compensation
___Railroad retirement or black lung benefits
___Other (describe exemption): _____

I request that any correspondence to me regarding my claim be sent to the following address:

_____

(FILL IN YOUR COMPLETE ADDRESS)


I certify under penalty of perjury that the statement above is true to the best of my knowledge and belief.


_____

DATE                           SIGNATURE OF JUDGMENT DEBTOR

# NOTICE TO BANKS

## PLEASE TAKE NOTE OF THE BANK'S RESPONSIBILITY UNDER CPLR 5222-A(a)(b)(3):

Service upon judgment debtor. Within two business days after receipt of the restraining notice or execution, exemption notice and exemption claim forms, the banking institution shall serve upon the judgment debtor the copy of the restraining notice and two exemption claim forms. The banking institution shall serve the notice and forms by first class mail to the last known address of the judgment debtor. The inadvertent failure by a depository institution to provide the notice required by this subdivision shall not give rise to liability on the part of the depository institution.